## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROSS KOVANDA and JAMES LaROSE,
as Executors of the Estate of Karen Ann Kovanda and
as Trustees of the Karen Ann Kovanda Revocable
Living Trust,

PLAINTIFFS

v.

HEITMAN, LLC, as Administrator of the HEITMAN
EMPLOYEES ADVANTAGE RETIREMENT PLAN,
JOHN HANCOCK RETIREMENT PLAN SERVICES,
LLC, as Record Administrator and Fiduciary of the
HEITMAN EMPLOYEES ADVANTAGE
RETIREMENT PLAN, JOHN HANCOCK TRUST
COMPANY LLC as Trustee of the Trust Fund, and
HEIDI HALLISEY,

DEFENDANTS

C.A. No.

## COMPLAINT FOR DISTRIBUTION OF FUNDS, BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT SEEKING DECLARATORY, INJUNCTIVE, EQUITABLE AND OTHER RELIEF

Plaintiffs seek distribution of an employer-sponsored retirement savings plan account owned by Karen A. Kovanda ("Ms. Kovanda), at the time of her death on May 29, 2021 in accordance with the affirmative representations made to Ms. Kovanda by the plan administrator and its record keeper prior to her death. The plan administrator has taken the unsupportable position that Ms. Kovanda's account is distributable to a person identified by Ms. Kovanda in a 2002 beneficiary designation form, even though the administrator and its record keeper disavowed that form for nearly four years prior to Ms. Kovanda's death and affirmatively represented to Ms. Kovanda that she had no beneficiary designated for her account. The disavowed beneficiary form cannot be resurrected posthumously. The plan administrator's

failure to distribute Ms. Kovanda's account to her trustees and executors is a breach of the plan documents requiring benefits to be paid to a participant's trust or estate when the participant is unmarried and has not designated a beneficiary.  The plan administrator and its record keeper breached its fiduciary duties to Ms. Kovanda under ERISA by failing to properly maintain Ms. Kovanda's beneficiary designation and by making willful misrepresentations to her regarding the status of her designation and the disposition of her account upon her death.  Plaintiffs seek to remedy these breaches and prevent any additional breach by the plan administrator, its record keeper or its other agents by reversing the determination by the plan administrator to dispense funds to the named beneficiary and order the funds to be transferred to the estate or grant equitable relief to the Plaintiffs by requiring the plan administrator or its agent to pay the Plaintiffs an amount equivalent to the balance of Ms. Kovanda's account at the time of her death, plus or minus investment gains or losses thereon.

## **PARTIES**

1.     Plaintiff Ross A. Kovanda ("Plaintiff Kovanda") is a named co-executor of Decedent's last will and testament (the "Will") and a named co-trustee of the Karen Ann Kovanda Revocable Living Trust (the "Trust").  *See* **Exhibits A and B**.  Plaintiff Kovanda was appointed as Executor of Decedent's Estate by the Kentucky District/Circuit Court for the County of Warren on July 21, 2021.  *See* **Exhibit C.**  Plaintiff Kovanda resides at 375 Wilshire Court, Valparaiso, Indiana, 46385.

2.     Plaintiff James P. LaRose ("Plaintiff LaRose") is a named co-executor of the Will and a named co-trustee of the Trust.  Plaintiff LaRose was also appointed as Executor of Decedent's Estate by the Kentucky District/Circuit Court for the County of Warren on July 21, 2021.  Plaintiff LaRose resides at 5011 McCormick Drive, Richfield, Ohio, 42286.

3.     Defendant Heitman, LLC ("Heitman"), is a Delaware Limited Liability Company

2

with a principal place of business located at 191 North Wacker Drive, Suite 2500, Chicago, Illinois, and is the Plan Sponsor and Administrator of the Heitman Employee Advantage Retirement Plan (the "Plan") as amended and restated as of October 2, 2017 (the "Plan Document"). *See* **Exhibit D**.  Heitman is also the former employer of Ms. Kovanda.

4.     Defendant John Hancock Retirement Plan Services ("JHRPS") is a Massachusetts Limited Liability Company with a principal place of business located at 197 Clarendon Street, Boston, Massachusetts, and is the record administrator for the Plan pursuant to a Service Agreement dated September 29, 2017.  *See* **Exhibit E.**

5.     Defendant John Hancock Trust Company LLC ("JHTC") is a Massachusetts Limited Liability Company with a principal place of business located at 197 Clarendon Street, Boston, Massachusetts, and is the custodian and trustee of the Plan according to the Plan's Summary Plan Description.  *See* **Exhibit F**.

6.     Defendant Heidi Hallisey ("Ms. Hallisey") is one of Decedent's six siblings.  Ms. Hallisey resides at 5920 Prosperity Lane, Ave Maria, FL 34142.

## NATURE OF THE ACTION

7.     This is an action under Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1132(a) ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due the beneficiary, to enforce rights under the plan, or to clarify rights to future benefits under the plan.  This is also an action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) to enjoin any future act that violates the terms of the plan or to obtain other appropriate equitable relief to redress such violations that occurred or to enforce the terms of the plan.  In addition or in the alternative, this is an action under ERISA § 404(a)(1)(a)(i), 29 U.S.C. § 1104(a)(1)(a)(i) and ERISA § 404(a)(B), 29 U.S.C. § 1104(a)(B) for breach of fiduciary duties, and for unjust enrichment to Defendant Hallisey under Florida law.

3

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because all of the parties are citizens of different states and the amount in controversy exceeds $75,000.

9.      This Court also has subject matter jurisdiction under 29 U.S.C. § 1451(c) because the claims involve Ms. Kovanda's employer-provided retirement plan, which is governed by ERISA.

10.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims that arise under the laws of the Commonwealth of Massachusetts and the State of Florida.  The state and common law claims arise from or are substantially related to the same acts giving rise to the federal claims.

11.     Venue is proper in this Court pursuant to 28 USC 1391(b)(2) and (b)(3) because two of the defendants, JHRPS and JHTC, have their principal place of business in Massachusetts and the assets in dispute in this action are held by JHRPS or JHTC in Massachusetts (or those funds were held by JHRPS or JHTC in Massachusetts at the time that Plaintiffs' right to recover those assets arose) and the affirmative representations made to Ms. Kovanda giving rise to the claims made herein were made by JHRPS in Massachusetts.

## GENERAL ALLEGATIONS

12.     Karen Ann Kovanda, also known as Karen Ann Kurnick, Karen A. Kurnick or Karen K. Kurnick (hereinafter "Ms. Kovanda"), died on May 29, 2021.

13.     At the time of her death, Ms. Kovanda was domiciled in Warren County, Kentucky.

14.     Ms. Kovanda was predeceased by her husband and her parents.  She did not have any children.  She was survived by six siblings, Plaintiff Ross Kovanda and also Kevin Kovanda, Joe'l LaRose, Brian Kovanda, James Kovanda and Ms. Hallisey.

**Decedent's Employer-Sponsored Retirement Account**

15.    During her life, Ms. Kovanda worked for Heitman, a real estate management and investment company, for more than 22 years.

16.    During her employment with Heitman, Ms. Kovanda contributed to an employer-sponsored retirement savings plan, known as the Heitman Employees Advantage Retirement Plan (the "Plan").

17.    Ms. Kovanda became eligible to participate in the Plan in 1995.

18.    Ms. Kovanda retired from Heitman in or around July 2017.

**The Plan's Fiduciaries**

19.    Heitman is the Plan Administrator as set forth in the Plan Document dated September 2017.  *See* **Exhibit D**.

20.    Heitman may have appointed an individual or a Committee to serve as Plan Administrator, as reflected in the Summary Plan Description.  *See* **Exhibit F**.

21.    Heitman, and any individual or Committee appointed by Heitman to act as Plan Administrator (collectively referred to herein as Heitman), is a Plan fiduciary under ERISA.

22.    JHRPS became the records administrator for the Plan in or around September 2017 pursuant to a Service Agreement (the "Agreement") between Heitman and JHRPS.  *See* **Exhibit E**.

23.    JHRPS is a Plan fiduciary under ERISA.

24.    Upon information and belief, JHTC is the Trustee of the Trust Fund that holds all money contributed to the Plan, as reflected in the Summary Plan Description.  *See* **Exhibit F**.

25.    JHTC is a Plan fiduciary under ERISA.

26.    Prior to September 2017, Merrill Lynch was the trustee, custodian and records administrator for the Plan pursuant to agreements between Heitman and Merrill Lynch in March 2001.  *See* **Exhibit G.**

27.    Prior to March 2001, the Record Keeper for the Plan was American Century and Heitman served as Trustee of the Trust Fund.  *See* **Exhibit G.**

**JHRPS's Assumption of Responsibilities and Communications with Ms. Kovanda**

28.    The Agreement between Heitman and JHRPS does not address whether existing beneficiary designations by plan participants would be transferred to JHRPS as the new record keeper.  *See* **Exhibit E.**

29.    Appendix II of the Agreement set forth a "List of Services" that were to be provided by JHRPS in the conversion to JHRPS assuming record keeping and other responsibilities for the Plan including preparation of a "Trust Agreement", "Plan event forms", and an "Administration Manual", as well as correspondence with the "prior recordkeeper".  *See* **Exhibit E, Appendix II.**

30.    Appendix II also provided for certain "Communication Services" including an announcement to participants regarding full account access, a Summary Plan Description, and also included a list of "On-going Services" including "Beneficiary Election Processing and Maintenance" and "Participant Account Statements". *See* **Exhibit E, Appendix II.**

31.    Appendix IV of the Agreement provides that "JHRPS's on-line system" will be responsible for "Beneficiary Designations" rather than Heitman.  *See* **Exhibit E, Appendix IV.**

32.    In or around September 2017, JHRPS mailed an information/welcome packet to Ms. Kovanda stating that JHRPS was now the "provider" for the Plan.  *See* **Exhibit H**.

33.     The welcome packet include included the following message:

> It's important to keep your beneficiary designations up-to-date.  Through the John Hancock website, you'll be able to view and change your beneficiary designations any time.

34.     In or around April 2018, JHRPS mailed a Summary Plan Description to Ms. Kovanda.  *See* **Exhibit E.**

35.     The Summary Plan Description states:

> **Who is the beneficiary of my death benefit?**
>
> **Married Participant.**  If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless an election is made to change the beneficiary.  IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE (IF YOU ARE MARRIED) MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE DEATH BENEFIT.  YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR, IF PERMITTED, A PLAN REPRESENTATIVE AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.
>
> IF YOU ARE MARRIED AND YOU CHANGE YOUR DESIGNATION, THEN YOUR SPOUSE MUST AGAIN CONSENT TO THE CHANGE.  In addition, you may elect a beneficiary other than your spouse without your spouse's consent if your spouse cannot be located.
>
> **Unmarried Participant.**  If you are not married, you may designate a beneficiary online at myplan.johnhancock.com.
>
> …
>
> **No beneficiary designation**. At the time of your death, if you have not designated a beneficiary or the individual named as your beneficiary is not alive, then the death benefit will be paid in the following order of priority to: surviving spouse of the Participant, or, if no surviving spouse, to the Participant's trust, or, if none, to the Participant's surviving issues, by right of representation, or, if none, to the Participant's estate.
>
> *See* **Exhibit E.**

36.     The Summary Plan Description states that a beneficiary may be designated online.

*See* **Exhibit E.**

37.     The Summary Plan Description does not say anything about designating a beneficiary on a form provided by a prior service provider for the Plan and does not say anything about beneficiary forms that may have previously submitted to the participant's employer.

38.     In or around August 2018, JHRPS informed Heitman that Kovanda was one of 72 "terminated participants" who had no beneficiary designation on file.  *See* **Exhibit I**.

39.     Heitman did not dispute or refute JHRPS's representations regarding Ms. Kovanda's lack of a beneficiary designation at any time prior to her death.

40.     As of August 2018, JHRPS and Heitman were both aware that there was a large number of Plan participants who had no beneficiary designation on file, despite a "Beneficiary Campaign" conducted by JHRPS.  *See* **Exhibit I**.

41.     Even though JHRPS advised Heitman that JHRPS "tend[s] to see significantly better response rates [to beneficiary designation efforts] when the message comes from the employer", on August 28, 2018, Heitman asked JHRPS to mail JHRPS's "standard flyer" to the 72 "terminated participants" without a beneficiary designation on file, including Karen Kovanda. *See* **Exhibit I**.

42.     JHRPS's beneficiary flyer (the "2018 Beneficiary Flyer") stated:

> You can review and manage your beneficiary on your plan account's website, or you may contact your Plan Administrator, HR benefits, or Fund Office for more information.

*See* **Exhibit J**.

43.     The 2018 Beneficiary Flyer also stated:

> Single individuals are free to name anyone they choose as a beneficiary.  If no one is named, the account will go to the estate, and must be distributed within 5 years and may be subject to estate and income taxes.

*See* **Exhibit J**.

44.     Beginning in September 2017, JHRPS mailed Ms. Kovanda quarterly statements for her Heitman Plan account (the "Heitman Account").

45.     Each statement JHRPS sent to Ms. Kovanda included, at the top of the second page, personal information regarding the account holder and beneficiary information for the account. *See, e.g,* **Exhibit K**.

46.     The beneficiary information on each statement sent to Ms. Kovanda by JHRPS stated as follows:

### Beneficiary Information

**Primary Beneficiary:**       No beneficiaries elected.
**Contingent Beneficiary:**    No beneficiaries elected.
Please contact mylife.jhps.com or 1-800-294-3575 immediately to elect your beneficiary information.

*See* **Exhibit K**

47.     For nearly four years, all statements sent by JHRPS to Ms. Kovanda stated explicitly that there was no beneficiary designation on file for her Heitman Account.

48.     Unlike the prior records administrator, Merrill Lynch, which sent statements to Ms. Kovanda for many years without including any specific information about beneficiary status, JHRPS's statements indicated that Ms. Kovanda should contact JHRPS using the website, thus indicating that JHRPS had beneficiary information that could be updated on the website.

49.     The only information JHRPS had regarding Ms. Kovanda's beneficiary information was that she did not have a beneficiary designated for her Heitman Account.

50.     The website therefore would have also reported that Ms. Kovanda did not have a beneficiary for her account.

51.     On information and belief, there was no communication to Ms. Kovanda by Heitman or JHRPS indicating that Heitman might have possession of an earlier beneficiary

designation and that such prior beneficiary designation could be effective notwithstanding the affirmative representations made by JHRPS, the purported records keeper of beneficiary designations, that Ms. Kovanda had no designated beneficiaries.

52.     On information and belief, at no time prior to Ms. Kovanda's death did JHRPS have a beneficiary designation on file for her.

53.     On information and belief, at no time prior to Ms. Kovanda's death did Heitman inform JHRPS that Ms. Kovanda had designated a beneficiary.

54.     Moreover, on information and belief, at no time prior to Ms. Kovanda's death did Heitman inform JHRPS that Ms. Kovanda had filled out a beneficiary designation form in 2002.

### Heitman's Post-Death Discovery of a Beneficiary Form

55.     After Ms. Kovanda's death, Heitman confirmed in an email from Heitman Chief Financial Officer Larry Christensen dated January 20, 2022 to Kevin Kovanda that that "there was no beneficiary indicated by Karen in the system" but acknowledged the possibility that there might be a designation in the "personnel file". *See* **Exhibit L** (Affidavit of Kevin Kovanda).

56.     Thus, a corporate officer of Heitman knew that a prior beneficiary designation might exist but not be reflected in the "system".

57.     Sometime thereafter, someone at Heitman apparently located a handwritten beneficiary designation form allegedly signed by Ms. Kovanda in 2002 (the "2002 Beneficiary Form"). *See* **Exhibit M**.

58.     Someone at Heitman forwarded a copy of this form to JHRPS.

59.     The 2002 Beneficiary Form purportedly designates Ms. Kovanda's parents, Robert and Audrey Kovanda, as primary beneficiaries, and Heidi Hallisey, as the contingent beneficiary. *See* **Exhibit M**.

60.     On information and belief, the 2002 Beneficiary Form was created by, or with the assistance of Merrill Lynch ("ML"), who served as the Plan trustee, custodian and records administrator prior to September 2017.

61.     The 2002 Beneficiary Form stated:

### AUTHORIZATION

You may amend or revoke your designation at any time by filing another copy of this form.  The most recently dated form will always apply (as long as it is witnessed, if applicable).

    (Signatures not included)

**For the Plan Sponsor Use only: Do Not Send This Form to ML**

    *See* **Exhibit M**.

62.     On information and belief, Heitman never recorded the beneficiaries identified in the 2002 Beneficiary Form in any database maintained by Heitman and did not transmit the beneficiary information to ML.

63.     On information and belief, neither Heitman nor ML provided the 2002 Beneficiary Form or information contained therein to JHRPS at any time prior to Ms. Kovanda's death.

**Decedent's Estate Planning Activities**

64.     In 2020, Ms. Kovanda retained an attorney, Natalie Feldman, Esq. ("Attorney Feldman"), to prepare an estate plan.

65.     Ms. Kovanda was explicit in all of her conversations with Attorney Feldman that she wanted all of her assets to pass to three of her six siblings (Ross Kovanda, Kevin Kovanda and Joe'l LaRose) but not to her other three siblings (Heidi Hallisey, James Kovanda and Brian Kovanda).  *See* **Exhibit N (Affidavit of Attorney Feldman)**.

66.    Ms. Kovanda also filled out an Estate Planning Questionnaire form that confirmed her intention to leave her assets only to Ross Kovanda, Kevin Kovanda and Joe'l LaRose.  *See* **Exhibit N**.

67.    Ms. Kovanda's largest asset was the Heitman Account.

68.    Attorney Feldman prepared the Will and Trust for Ms. Kovanda which named Ross Kovanda, Kevin Kovanda and Joe'l LaRose as her beneficiaries. Heidi Hallisey, James Kovanda and Brian Kovanda are not beneficiaries under the Will or Trust.  *See* **Exhibits A and B.**

69.    Attorney Feldman advised Ms. Kovanda that her retirement accounts (which included the Heitman Account and a separate IRA held by Wells Fargo) were non-probate assets that would pass pursuant to beneficiary designations or to her estate and that she should confirm the beneficiaries for those retirement accounts to ensure that they were in conformity with her intentions.

70.    Upon information and belief, Ms. Kovanda contacted Wells Fargo, the custodian of her IRA account, and learned that her deceased parents were named as primary beneficiaries of the IRA and that her sister, Heidi Hallisey, was named as the contingent beneficiary.

71.    Upon information and belief, Ms. Kovanda concluded that there was no beneficiary designated for her Heitman Account, as noted explicitly on the four years of quarterly account statements that JHRPS mailed to her.

72.    Ms. Kovanda advised Attorney Feldman that one of her retirement accounts had no beneficiary designated and that the other had an old beneficiary designation that she was changing.

73.     Upon information and belief, Ms. Kovanda advised Wells Fargo (either directly or through an agent) that she wished to remove her deceased parents and Ms. Hallisey as beneficiaries of her IRA and instead name Ross Kovanda, Kevin Kovanda and Joe'l LaRose as beneficiaries.

74.     Wells Fargo (or its agent) prepared a change of beneficiary form for Ms. Kovanda's IRA that named Ross Kovanda, Kevin Kovanda and Joe'l LaRose as beneficiaries pursuant to Ms. Kovanda's instructions and mailed the form to her.  *See* **Exhibit O**.

75.     Ms. Kovanda was hospitalized and died prior to receiving the change of beneficiary form for her Wells Fargo IRA (the form was mailed to the wrong address and then forwarded to Ms. Kovanda's correct address).

76.     As reflected in Ms. Kovanda's discussions with Attorney Feldman, Ms. Kovanda was unaware that she had designated any beneficiaries for the Heitman Account and unaware that she had previously named Heidi Hallisey as a contingent beneficiary of that Account.

77.     Based upon the multiple communications sent to her by JHRPS, Ms. Kovanda reasonably believed that she had no beneficiary designation for her Heitman Account and that the Account would be paid to her estate upon her death.

### Plaintiffs' Claim for Distribution of the Heitman Account

78.     The Heitman Account was valued at approximately $1,440,000 at the time of Ms. Kovanda's death.  *See* **Exhibit P**.

79.     On December 9, 2022, in their capacities as Trustees of Ms. Kovanda's Trust and Executors of her Estate, Plaintiffs submitted to Heitman, as Plan Administrator, a formal claim for distribution of the Heitman Account.  *See* **Exhibit Q**.

80.     On January 25, 2022, Heitman indicated its intention to file a Federal Interpleader action if Plaintiffs were unable to reach an agreement as to distribution of the Heitman Account with Ms. Hallisey.  *See* **Exhibit R**.

81.     On February 9, 2023, Ms. Hallisey asserted her claim for distribution of the Heitman Account and expressed her objection to Heitman's assertion that it would file an interpleader action.  *See* **Exhibit S**.

82.     On February 10, 2023, Plaintiffs objected to the statements in Ms. Hallisey's letter to Heitman and reiterated their opinion that Heitman was estopped from asserting that the 2002 Beneficiary Designation was valid.  *See* **Exhibit T**.

83.     On March 6, 2023, Heitman requested additional information from Plaintiffs in support of their claim for distribution of the Heitman Account.  *See* **Exhibit U**.

84.     On March 30, 2023, Plaintiffs responded to Heitman's request for additional information.  *See* **Exhibit V**.

85.     On May 5, 2023, Heitman rejected Plaintiffs' claim.  *See* **Exhibit W**.

86.     On May 18, 2023, Plaintiffs requested that Heitman produce copies of documentation related to Ms. Kovanda's Heitman Account and documentation relied upon by Heitman in reaching its determination.  *See* **Exhibit X**.

87.     On June 16, 2023, Heitman produced some of the requested documentation to Plaintiffs.  *See* **Exhibit Y**.

88.     On June 23, 2023, Plaintiffs requested additional documentation from Heitman. *See* **Exhibit Z**.

89.     On June 29, 2023, Heitman produced some additional documentation to Plaintiffs. *See* **Exhibit AA**.

90.     Upon information and belief, Heitman and JHRPS are in possession of additional documentation that would support allegations that Heitman breached its fiduciary duties to Ms. Kovanda and other similarly situated Plan participants when it entered into a service agreement with JHRPS, including but not limited to the Trust Agreement, Plan event forms, and Administration Manual prepared by JHRPS pursuant to the Agreement with Heitman, as well as JHRPS's correspondence with Merrill Lynch, as prior recordkeeper.

91.     Plaintiffs filed a formal administrative appeal of Heitman's rejection on June 30, 2023.  *See* **Exhibit BB**.

92.     Heitman rejected Plaintiffs' appeal on August 29, 2023.  *See* **Exhibit CC**.

93.     Plaintiffs have exhausted their administrative remedies under the Plan.

**Heitman's Rejection of Plaintiff's Claim and Conflict of Interest**

94.     In rejecting Plaintiffs' claim for distribution of Ms. Kovanda's Heitman Account, Heitman claimed that it has a right to rely upon the 2002 Beneficiary Form, which Ms. Kovanda never changed ("Heitman's Decision")

95.     Heitman's Decision, however, completely disregards the numerous affirmative representations that its record keeper, JHRPS, made to Ms. Kovanda prior to her death, namely that Ms. Kovanda had no beneficiary designated for her Account and that without a beneficiary designation, her Account would be paid to her estate.

96.     Likewise, Heitman's Decision completely disregards the fact that when JHRPS advised Heitman that Ms. Kovanda had no beneficiary designated for her account, no one at Heitman bothered to look in her personnel file to determine whether that statement was accurate.

97.      Heitman's Decision suggests that it was Ms. Kovanda's obligation to notify JHRPS of the 2002 Beneficiary Designation Form  and to "discuss any discrepancy in JHRPS's records and her Beneficiary Designation Form on file with Heitman."  *See* **Exhibit CC**.

98.    Ms. Kovanda, however, had no reason to believe that JHRPS would have or maintain inaccurate information regarding the status of her beneficiary designation.

99.    Nor did Ms. Kovanda have any reason to believe that JHRPS would provide her with inaccurate information regarding her Account.

100.    It was reasonable for Ms. Kovanda to rely on JHRPS's affirmative representations that there was no beneficiary designated for her account.

101.    It was also reasonable for Ms. Kovanda to rely on JHRPS's affirmative representations that if she did not designate a beneficiary, her account would be distributed to her estate upon her death.

102.    If Ms. Kovanda relied upon the information provided to her by JHRPS regarding her Account and believed such information to be accurate, there would be no reason for her to challenge JHRPS's representations if she wanted her Heitman Account to be paid to her estate.

103.    Heitman's Decision was arbitrary and capricious and lacking in fairness or equity.

104.    It was an abuse of Heitman's discretion to reject Plaintiffs' claim for distribution based upon the 2002 Beneficiary Designation after permitting JHRPS to represent to Ms. Kovanda that she had no beneficiary designation for her Account.

105.    Heitman's Decision was invariably made in bad faith as a product of its conflict of interest with respect to Ms. Kovanda's Account.  Rather than giving Ms. Kovanda the loyalty to which she was entitled, Heitman's Decision was a self-serving avoidance of liability for its own malfeasance.

106.    The only way for Heitman to determine that it could rely upon the 2002 Beneficiary Designation after having disavowed that document for years was to completely overlook its own negligence in maintaining Ms. Kovanda's records and in allowing its record

keeper to provide inaccurate and misleading information to Ms. Kovanda.

107.    The failure to properly maintain the beneficiary designation and the express communication of false information to Ms. Kovanda was a breach of fiduciary duty by Heitman and/or its agent JHRPS.

108.    Once Heitman was informed in 2018 by JHRPS that Ms. Kovanda was one of a number of former employees that did not have a beneficiary designation in the JHRPS website, Heitman again breached its fiduciary duty as they failed to address the problem by locating the 2002 Beneficiary Designation and provide it to JHRPS.

109.    Heitman's Decision was a further breach of its fiduciary duties by failing to acknowledge the consequences of its prior breach of fiduciary duty in failing to properly maintain the 2002 Beneficiary Designation and failing to communicate this Designation to JHRPS, Heitman's record keeper who assumed responsibility for maintaining beneficiary designations made by Plan participants when it entered the Agreement with Heitman in 2017.

110.    The false representations regarding Ms. Kovanda's beneficiary status in the quarterly account statements JHRPS sent to Ms. Kovanda, which are required by ERISA to be sent to 401K participants, were the direct and proximate cause of Ms. Kovanda's reasonable reliance upon the beneficiary status indicated in those statements to achieve her goal of having this Account pass to her estate, just as JHRPS had described in their mailings to her.

111.    Heitman's Decision is the inevitable result of the conflict of interest that exists between distributing the funds to its former employee's estate due to their own breach of fiduciary duty in misrepresenting her beneficiary status or distributing the funds to the named beneficiary on a form long since disregarded by Heitman.

112.    Rather than take responsibility for its own malfeasance, Heitman further breached its duty of loyalty to Ms. Kovanda by asserting that it was she who was responsible to correct JHRPS's false representations made in the quarterly account statements that Heitman now conveniently claims were not "official" and not of legal consequence sufficient to overcome the obligation to distribute the Account to a named beneficiary.

**Current Status of Funds**

113.    Plaintiffs do not have any knowledge of the current status of the funds in Ms. Kovanda's Heitman Account.

114.    Heitman, by their attorney, has refused to confirm whether the Heitman Account has been distributed or whether it is withholding distribution pending the exhaustion of Plaintiffs' legal remedies. *See* **Exhibit DD**.

115.    The funds in Ms. Kovanda's Heitman Account may have been distributed to Ms. Hallisey.

**COUNT I – DECLARATORY JUDGMENT AGAINST HEITMAN AND JHRPS**

116.    Plaintiffs adopt and incorporate all prior paragraphs of the Complaint as if fully set forth herein.

117.    A present, genuine, and justiciable controversy exits between Plaintiffs and Defendant Heitman and Defendant JHRPS regarding the proper beneficiary of the Heitman Account and to whom the funds of the Heitman Account should be distributed under the Plan that is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

118.    Heitman failed to provide JHRPS with accurate beneficiary information for Ms. Kovanda when JHRPS took over as record administrator of the Plan.

119.    JHRPS advised Heitman there was no beneficiary for Ms. Kovanda's account.

120.    Heitman did not check its records or correct this statement.

121.    Heitman's failure to provide accurate beneficiary information to JHRPS or to correct JHRPS's statement was a breach of its fiduciary duties to maintain accurate records.

122.    JHRPS accepted the information provided by Heitman without confirming the accuracy thereof.

123.    JHRPS's failure to determine the accuracy of Heitman's representations was a breach of its fiduciary duties to maintain accurate records.

124.    JHRPS confirmed in writing to Ms. Kovanda that she had no beneficiary designated for her account.

125.    JHRPS also confirmed in writing to Ms. Kovanda that if she did not designate a beneficiary, her account would be paid to her estate.

126.    Ms. Kovanda had a right to rely on the affirmative representations made to her by JHRPS that she did not have a beneficiary designated for her Heitman Account.

127.    Ms. Kovanda had a right to rely on the affirmative representations made to her by JHRPS that if she did not designate a beneficiary for her Heitman Account, that Account would be paid to her estate upon her death.

128.    JHRPS's unverified representations to Ms. Kovanda regarding the status of her beneficiary designation was a breach of its fiduciary duties to provide accurate and not misleading information to Plan participants.

129.    Plaintiffs timely advised Heitman and JHRPS of its claims for distribution of Ms. Kovanda's Heitman Account.

130.    Heitman wrongfully determined that it could rely on the 2002 Beneficiary Designation after having repudiated that form starting when it entered into the Agreement with

JHRPS in 2017 and continuing thereafter until Ms. Kovanda's death.

131. There are likely additional documents maintained by JHRPS or Heitman that further demonstrate that Heitman and John Hancock negligently maintained Ms. Kovanda's beneficiary designation and willfully reported false information to Ms. Kovanda regarding the status of her beneficiary designation.

**WHEREFORE**, Plaintiffs seek entry of a declaratory judgment in favor of Plaintiffs that:

A.  Defendants Heitman and JHRPS breached their fiduciary duties by negligently maintaining Ms. Kovanda's beneficiary information for her Heitman Account;

B.  Defendants Heitman and JHRPS breached their fiduciary duties by failing to verify Ms. Kovanda's beneficiary information before making affirmative representations to her regarding the absence of a designation by Ms. Kovanda;

C.  Defendants Heitman and JHRPS breached their fiduciary duties to Ms. Kovanda by making willful, affirmative representations to Ms. Kovanda regarding her beneficiary designation that were false, misleading, and inaccurate;

D.  Defendants Heitman and JHRPS are estopped from relying on the 2002 Beneficiary Designation that they ignored and/or disavowed prior to Ms. Kovanda's death;

E.  At the time of Ms. Kovanda's death, the 2002 Beneficiary Designation was null and void;

F.  At the time of Ms. Kovanda's death, there was no valid beneficiary designation in effect for her Heitman Account;

G.  Payment of the Heitman Plan to Heidi Hallisey would be (or was) a further breach of Heitman's and JHRPS's fiduciary duties under ERISA § 404(a)(B), 29 U.S.C. § 1104(a)(B);

H.  The Heitman Account must be distributed to Plaintiffs, in accordance with the Plan Document; and

I.  Heidi Hallisey is not an intended recipient of the Heitman Account and is not entitled to distribution thereof.

## COUNT II – DISTRIBUTION OF THE HEITMAN ACCOUNT TO PLAINTIFFS PURSUANT TO ERISA § 502(a)(1)(b)

132.    Plaintiffs adopt and incorporate all prior paragraphs of the Complaint as if fully set forth herein.

133.    The Plan Document requires that the account of a participant who dies without a surviving spouse and without naming a beneficiary be paid to the participant's trust.

134.    Ms. Kovanda was not married at the time of her death.

135.    Ms. Kovanda's 2002 Beneficiary Designation was not cognizable at the time of her death based upon the actions of Heitman and JHRPS.

136.    Ms. Kovanda died without a valid beneficiary designation in place for her Heitman Account.

137.    Plaintiffs are the Trustees of Ms. Kovanda's Trust.

138.    Plaintiffs have exhausted their administrative remedies.

**WHEREFORE,** Plaintiffs seek entry of a judgment:

A.    Compelling Heitman, JHRPS and JHTC to distribute Ms. Kovanda's Heitman Account, together with all gains or losses thereon, to Plaintiffs under ERISA **§** 502(a)(1)(b);

B.    Awarding Plaintiffs all other and further relief available under ERISA;

C.    Awarding Plaintiffs their counsel fees and costs incurred in connection with this action; and

D.    Awarding Plaintiffs all other and further relief to which this Court deems equitable and just.

## COUNT III – EQUITABLE RELIEF AGAINST HEITMAN AND JHRPS FOR BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA § 502(a)(3)

139.    Plaintiffs adopt and incorporate all prior paragraphs of the Complaint as if fully set forth herein.

140.    Defendant Heitman and Defendant JHRPS breached their fiduciary duties to Ms. Kovanda and to Plaintiffs by failing to maintain accurate beneficiary designation records, by willfully misrepresenting the status of Ms. Kovanda's beneficiary records, and by providing confusing and misleading information to Ms. Kovanda.

141.    As a result of Defendants' breach, Ms. Kovanda reasonably expected that her Heitman Account would be paid upon death to her estate.

142.    Heitman's arbitrary and capricious rejection of Plaintiffs' claim and its decision to honor the 2002 Beneficiary Designation represents a further breach of its fiduciary duties and it duty of loyalty to Ms. Kovanda.

143.    Plaintiffs have been wrongfully deprived of the funds in Ms. Kovanda's Heitman Account.

144.    Plaintiffs are entitled to equitable relief under ERISA § 502(a)(3), including but not limited to restitution, reformation, rescission, estoppel and disgorgement:

**WHEREFORE**, Plaintiffs seek entry of a judgment:

A.    Compelling Heitman and/or JHRPS to distribute to Plaintiffs an amount equivalent to the value of Ms. Kovanda's Heitman Account at the time of her death, together with all gains or losses thereon;

B.    Awarding Plaintiffs all other and further equitable relief available under ERISA;

C.    Awarding Plaintiffs their counsel fees and costs incurred in connection with this action; and

D.    Awarding Plaintiffs all other and further relief to which this Court deems equitable and just.

## COUNT IV – EQUITABLE RELIEF AGAINST HEITMAN AND JHRPS FOR VIOLATION OF PLAN TERMS PURSUANT TO ERISA § 502(a)(3)

145.    Plaintiffs adopt and incorporate all prior paragraphs of the Complaint as if fully set forth herein.

146.    To the extent that Defendant Heitman, Defendant JHRPS or Defendant JHTC have distributed the funds of the Heitman Account to Defendant Hallisey, Plaintiffs seek equitable relief to redress violations of the Plan terms by Heitman and JHRPS, including but not limited to restitution, reformation, rescission, estoppel and disgorgement.

147.    Plaintiffs are entitled to equitable relief in the amount of any funds distributed to Defendant Hallisey, to the extent any were distributed.

**WHEREFORE,** Plaintiffs seek entry of a judgment:

A.    Compelling Heitman and/or JHRPS to distribute to Plaintiffs an amount equivalent to the value of Ms. Kovanda's Heitman Account at the time of distribution thereof to Ms. Hallisey, together with interest thereon;

B.    Awarding Plaintiffs all other and further equitable relief available under ERISA;

C.    Awarding Plaintiffs their counsel fees and costs incurred in connection with this action; and

D.    Awarding Plaintiffs all other and further relief to which this Court deems equitable and just.

### COUNT V – UNJUST ENRICHMENT (as to Heidi Hallisey) UNDER FLORIDA STATE LAW

148.    Plaintiffs adopt and incorporate all prior paragraphs of the Complaint as if fully set forth herein.

149.    Ms. Kovanda was clear in her intent that she did not want Heidi Hallisey to inherit or receive any of her assets after her death.

150.    Ms. Kovanda disclosed this unambiguous intent to Attorney Feldman.

151.    Ms. Kovanda believed that there was no beneficiary designation for her Heitman Account because her JHRPS quarterly statements affirmatively stated there was no beneficiary designated for her Heitman Account.

152.    Ms. Kovanda disclosed this belief to Attorney Feldman.

153.    JHRPS advised Ms. Kovanda in JHRPS's Beneficiary Flyer that if Ms. Kovanda did not designate a beneficiary, her Heitman Account would be paid to Ms. Kovanda's estate.

154.    If Heitman, JHRPS, or JHTC have distributed the assets in Ms. Kovanda's Heitman Account to Ms. Hallisey pursuant to the 2002 Beneficiary Form, Ms. Hallisey will have received a benefit from Ms. Kovanda that Ms. Kovanda did not intend for Ms. Hallisey to receive.

155.    It would be inequitable for Ms. Hallisey to retain the Heitman Account assets under these circumstances.

**WHEREFORE,** Plaintiffs seek entry of a judgment:

A.    Compelling Ms. Hallisey to disgorge the improperly transferred funds from the Heitman Account and return those funds to JHRPS for proper distribution to Plaintiffs; or, in the alternative,

B.    Imposing a constructive trust over the assets improperly distributed to Ms. Hallisey from the Heitman Account in favor of Plaintiffs; and

C.    Granting Plaintiffs all other and further relief to which this Court deems equitable and just.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

**ROSS KOVANDA AND JAMES LAROSE**,

By their Attorneys,

McCARTER & ENGLISH, LLP

/s/ Leigh J. Martinson
LEIGH MARTINSON ESQ., BBO #658669
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Tel. 617-449-6500
Dated:  September 19, 2023            lmartinson@mccarter.com