**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROSS KOVANDA and JAMES LaROSE, as Executors of the Estate of Karen Ann Kovanda and as Trustees of the Karen Ann Kovanda Revocable Living Trust, <br><br> PLAINTIFFS <br><br> v. <br><br> HEITMAN, LLC, as Administrator of the HEITMAN EMPLOYEES ADVANTAGE RETIREMENT PLAN, and HEIDI HALLISEY, <br><br> DEFENDANTS | C.A. No. 1:23-cv-12139-NMG |

**MEMORANDUM IN SUPPORT OF DEFENDANT HEIDI HALLISEY'S MOTION TO DISMISS**

*"For 'tis the sport to have the enginer hoist with his own petard"*

– Shakespeare's <u>Hamlet</u>

**INTRODUCTION**

Now comes the Defendant in the above-captioned civil action, Heidi Hallisey, ("Ms. Hallisey") and submits this memorandum of law in support of her motion for dismissal under FCRP 12(b)(2), 12(b)(3) and 12(b)(6). As a threshold matter, this Court lacks personal jurisdiction over Ms. Hallisey in Massachusetts as the claim in Count V against her is a Florida state-law unjust enrichment claim that stands independent of the federal question ERISA claims made against co-Defendant Heitman, so at minimum, it should be dismissed to be refiled in Florida, where she lives, and would be a claim made by the Plan, not Plaintiffs, as discussed below.  Before the Plan's Unjust Enrichment claim can be  adjudicated, this Court would have to determine that she was not

1

the proper beneficiary as determined by Heitman as Plan Administrator of their 401(k) Heitman Employee Advantage Retirement Plan as part of the litigation with Heitman, rendering the distribution to Ms. Hallisey a mistake.

Even if Plaintiffs can establish personal jurisdiction, their pleadings fail to state a claim against Ms. Hallissey for unjust enrichment under Florida law because Plaintiffs' pleadings and Exhibits show that 1) Heitman's Plan, not the Plaintiffs nor Karen Ann Kovanda  (Ms. Kovanda") during her lifetime, conferred the benefit of distribution on Ms. Hallisey, and 2) it would not be unjust for her to retain the benefit conferred because Ms. Hallisey is the proper beneficiary under applicable ERISA case law, the controlling Plan Document (ECF 22-4) because she is named on the beneficiary designation form on file (ECF 22-13), and was conclusively determined to be the proper beneficiary by Heitman as Plan Administrator with absolute and final determination authority granted under the Plan Document's unambiguous terms to interpret the Plan Document and make determinations as to proper beneficiaries (ECF 22-4 ¶14.3).

Plaintiffs, as the executors, trustees and beneficiaries of the estate of Karen Ann Kovanda ("Ms. Kovanda") ask the Court to reverse nearly fifty years of ERISA[1] caselaw, including *Kennedy*[2] and its progeny, and in effect order that a 401(k) recordkeeper's unintentional and expressly disclaimed[3] omission of the identity the validly-designated beneficiary on file with the plan administrator on monthly account statements acts to override or in the alternative, to amend, the Plan Document in a manner inconsistent with its terms and strict amendment procedures.  They ask that the Plan Document's terms be ignored so as to render an otherwise-valid Beneficiary

---

[1] Employee Retirement Income Security Act of 1974 as Amended.
[2] Kennedy v. Plan Administrator for DuPont Savings and Investment Plan, 555 U.S. 285 (2009).
[3] Compl., Ex. K, an Account Statement of Ms. Kovanda's 401(k) account, includes the following disclaimer: "In the Event of any Discrepancies…*Please read this statement carefully. Contact us immediately at 1-800-294-3575 if you believe there is an error*…"

designation void or "stale".  This would achieve Plaintiffs' "equitable" outcome of setting aside Ms. Kovanda's properly executed, filed and accepted signed beneficiary designation form in favor of instead reaching the last-out-of-five escheat-avoiding fail-safes schemes found in the Plan Document: distributing account proceeds to the estate of a deceased unmarried Participant having no beneficiary designation (Id., § 12.7(e)).  This would result in the Plaintiffs receiving the proceeds, along with their brother and representative Kevin Kovanda, whose affidavit is included as a supporting exhibit to Plaintiffs' complaint.  Ms. Hallisey would receive nothing.

Despite the well-known fact that 401(k) accounts are distributed as a matter of law under ERISA law, ex-probate, Plaintiffs distract from the relevant facts related to the Plan Document and valid beneficiary designation forms by introducing irrelevant evidence of the many apparent changes to her estate that Ms. Kovanda made in the last days of her life.  Ms. Kovanda's will (ECF 22-1) and revocable trust (ECF 22-2) executed just hours before her death, names the Plaintiffs as both executors, trustees and beneficiaries while omitting Ms. Hallisey and two of Ms. Kovanda's other brothers James Kovanda and Brian Kovanda.  Plaintiffs show these documents to urge the court to set aside the sole living named beneficiary of the subject 401(k) account according to the Plan Document and the determination of the Plan Administrator, as if evidence of her intention to divert all her assets to the Plaintiffs should trump her valid beneficiary form.

Plaintiffs make claims in Counts II and V for equitable relief including requesting an injuctive order for Ms. Hallisey to return the funds she was paid, as well as state claims under Florida law of unjust enrichment.   Plaintiffs have unclean hands and therefore are not entitled to relief in equity.  They have threatened Ms. Hallisey repeatedly that they will harass her with what they or their counsel should know are unsupportable equitable claims of unjust enrichment *even if this Court determines that Ms. Hallisey is the proper beneficiary*, in order to pressure her to give

up her rights as the sole beneficiary. (Hallisey Affidavit, ¶ 28). Meanwhile, Plaintiffs have tried at every turn to deprive Ms. Hallisey of the opportunity to fairly contest her right to the funds. As just one example, Plaintiffs admit that they failed to even inform Ms. Hallisey of her status as the sole beneficiary until November 2022, *over a year a half after Ms. Kovanda passed, and a full ten months after they learned of Ms. Hallisey being the sole living beneficiary* on the only valid beneficiary form on file with Heitman (Compl. ¶55, Compl. Ex. F, ¶6-8). "He who comes in equity must come with clean hands." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 241, 54 (1933).

## STATEMENT OF MATERIAL FACTS

Plaintiffs are co-executors/co-trustees (and two of three equal sibling beneficiaries) of both the estate and trust of the late Karen Anne Kovanda ("Ms. Kovanda") by virtue of her Last Will and Testament executed one day before she passed on May 29, 2021 (ECF 22-3), and trustees of a revocable trust also executed one day before her passing (ECF 22-1, ECF 22-2). During her lifetime, for 22 years until 2017, Ms. Kovanda was employed by Heitman, LLC, ("Heitman") a Delaware entity, at its headquarters in Chicago, IL(ECF 22, ¶13). During her employment, Heitman (not Ms. Kovanda, as incorrectly alleged by Plaintiffs) made contributions to its ERISA-governed 401(k) plan trust fund (ECF 22-4, §2.16) for the benefit of Ms. Kovanda (ECF 22-4, §5.1(a), §5.3, §7.1(a)), pursuant to a deferred compensation agreement and 401(k) Plan Document and incorporated Trust agreement qualified under IRC 401(a). (Id.). Defendant Heidi Hallisey ("Ms. Hallisey") is Ms. Kovanda's sister, who resides in Florida (Hallisey Aff. 2-5).

Prior to 2002, Ms. Kovanda encountered significant personal challenges, and to help her, Ms. Hallisey opened her then-current home in Rockford, Illinois to Ms. Kovanda, allowing her

to live with Ms. Hallisey, her husband Kevin Hallisey, and their three young children for a period of more than two years (Hallisey Affidavit ¶ 11).  At multiple points after living with Ms. Hallisey, Ms. Kovanda stated to Ms. Hallisey that she would "take care of" her, without saying how (Id., ¶ 12).  On August 1, 2002, unbeknownst to Ms. Hallisey or Ms. Kovanda's other siblings, including the Plaintiffs, Ms. Kovanda apparently completed a "Heitman Employee Advantage Retirement and Trust" Beneficiary Designation Form (ECF 22-15), signed it, and submitted it to Amy Galitano[4], Heitman's Plan Administrator representative, who accepted it and filed it in Ms. Kovanda's personnel file, consistent with the terms of the Plan Document, §12.7, which calls for the beneficiary designations to be presented to the administrator on a form of their choosing, and then filed with the Plan Administrator:

The Beneficiary Designation Form identified Ms. Kovanda's now-deceased parents as primary beneficiaries, and only Ms. Hallisey as contingent beneficiary (ECF 22-13).

Notably, none of Ms. Kovanda's other siblings were included as contingent beneficiaries, including the Plaintiffs and Kevin Kovanda, despite there being available additional space for more beneficiaries.  Ms. Hallisey did not know that Ms. Kovanda had named her as the sole contingent beneficiary of her sister's account  (Hallisey Affidavit, ¶24) until her brother, Kevin Kovanda, representing Plaintiffs, contacted her in November 2022, ten months after he and the Plaintiffs learned that she was named as the sole living beneficiary. (ECF 22-12, ¶¶6-8).  On May 29, 2021, Ms. Kovanda died, unmarried and without any children (Compl.).

On January 14, 2022, Kevin Kovanda, representing the Plaintiffs, had commenced making application for the proceeds of Ms. Kovanda's 401(k) account with JHRPS and Heitman. (Compl. Ex L., ¶ 3).  In due course of confirming a proper beneficiary designation, Heitman

---

[4] The spelling the Administrator representative may be incorrect.

found the valid 2002 Beneficiary Designation Form identifying Ms. Kovanda in its files, and notified Plaintiffs' representative Kevin Kovanda of this fact. (Id. ¶ 6). No one notified Ms. Hallisey of her beneficiary status, (Hallisey Aff. ¶ 24-26) and Plaintiffs spent the next ten months pressuring Heitman to declare the 2002 Beneficiary Designation form as "stale", "void", "disregarded" and otherwise invalid, so the estate and in turn Plaintiffs would be beneficiary of the account, intending to do so behind Ms. Hallisey's back and without her ever being informed, all based on fiduciary breach liability threats arising from Heitman and JHRPS' innocently failing to even know about Ms. Kovanda's filed valid Beneficiary form. In November 2022, Plaintiffs' representative Kevin Kovanda finally informed Ms. Hallisey that she was the named beneficiary of the 401(k) account, and began to pressure her into agreeing to give them the funds to then split among Plaintiffs, Kevin Kovanda and Ms. Hallisey. (Hallissey Affidavit, 28). When Ms. Hallisey retained an attorney to represent her, she learned that she had a right to the distribution as the proper beneficiary, and made application for the funds with John Hancock and Heitman. Heitman initially put a hold on the funds pending a beneficiary determination, claiming the determination was an interpleader-ready case due to a conflict over the rightful beneficiary, but eventually came to the correct conclusion that only Ms. Hallisey was the proper beneficiary under the Plan Document. (ECF 22-22). Plaintiffs appealed this determination, and the Heitman Plan Administrator considered their appeal, and denied it. (ECF 22-26 through 29).

Plaintiffs filed a complaint in this action in Federal Court on September and amended the complaint October 27, 2023, naming Heitman as a defendant under ERISA § 502, *et seq*, and have named Ms. Hallisey as a joined defendant in their complaint against Heitman the Administrator of the Heitman Employees Advantage Retirement Plan.

In both their original Complaint and the filing of the First Amended Complaint over a month later, Plaintiffs redacted Ms. Kovanda's Social Security number on their exhibits, but

despite the popup on the login page of MADC ECF, Plaintiffs twice published unredacted copies of the 2002 Beneficiary Designation Form that contained Ms. Hallisey and her parents' Social Security numbers, despite Ms. Hallisey's counsel having to contact the Magistrate Court Clerk's office to have the exhibits sealed on the first filing after weeks of public exposure between filing and service.  (Hallisey Affidavit ¶¶ 34-37).

## ARGUMENT

### A. VENUE IS IMPROPER UNDER 29 U.S.C. 1132(e)(2)

Plaintiffs filed their original Complaint (ECF 1) in the District of Massachusetts based on the presence there of two of the now-terminated Defendants, John Hancock Retirement Plan Services ("JHRPS"), and its related trust entity John Hancock Trust Company ("JHTC").  The elimination at Plaintiff's election of those two Defendants and the fact that several of the more significant fact- and witness-intensive claims as to the acts and omissions complained of are attributed now to Illinois-based Heitman as Plan Administrator, raises questions as to appropriate venue under 29 U.S.C. § 1132(e)(2) (an action brought under ERISA "may be brought in the district where the plan is administered") which would be in Illinois.

Failing a determination that Venue is improper under the 1132(e)(2) requirement, the Forum is very inconvenient for Ms. Hallisey, under a Fifth amendment burden analysis for nationwide personal jurisdiction of ERISA actions, since she is not a direct party to the equitable Count II calling for reversal of Heitman's determination.  She is the least able to travel among all the parties, and she can least afford to participate and fund litigation in a venue nearly 800 miles from her home.  We would again request a dismissal without prejudice, allowing Heitman or the Plan to bring an unjust enrichment claim in Florida, should this court find that the distribution to Ms. Hallisey was in error.

**B, MS. HALLISEY IS NOT SUBJECT TO THE COURT'S PERSONAL JURISDICTION ON THE INDEPENDENT STATE LAW CLAIM, AND DISMISSAL IS APPROPRIATE**

Ms. Hallisey is a resident of Florida, and meets none of the Massachusetts long arm statute elements for personal jurisdiction.  She is a completely passive actor in the Plaintiff's ERISA complaint, acting only as the named contingent beneficiary on the beneficiary designation form on file.  The funds at issue are not located in Massachusetts (Hallisey Affidavit ¶7).

As set forth below, the Plaintiffs' claims as to abandoning her as proper beneficiary are barred by the existence of a valid beneficiary designation form naming Ms. Hallisey on Heidi Hallisey's sister Ms. Kovanda's 401(k) account, rendering Ms. Hallisey the proper beneficiary of the account under ERISA precedent such as *Kennedy*, and the unambiguous language of the Heitman Retirement Advantage Plan Document.  Heidi Hallisey is also the proper beneficiary as determined by Heitman under its enumerated powers to interpret the plan, determine beneficiary status and resolve conflicts in the administration of the Plan.

In Ms. Hallisey's case, the Massachusetts District Court lacks any basis for personal jurisdiction over her on the state claims of unjust enrichment under Florida law, and she moves the Court to dismiss her under FCRP 12(b)(2) unless it chooses to determine based on the pleadings and the arguments for dismissal hearin that Plaintiffs have failed to state a claim against her, and dismisses the relevant counts under FCRP 12(b)(6).

Plaintiffs' Complaint makes no allegation as to personal jurisdiction, as is Plaintiffs' right, but Ms. Hallisey challenges that jurisdiction, and Plaintiffs must prove that general or specific personal jurisdiction exists over Ms. Hallisey in Massachusetts, and that haling her into Massachusetts courts meets the long arm statute of the forum state (MGL c. 223A §3) and comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Ms. Hallisey is a resident of Florida (Compl. ¶ 4).  Attached is the Affidavit of Ms. Hallisey, (Hallisey

Affidavit"), detailing her domicile and that she has no past or present connections to Massachusetts in any respect other than a few visits over many years, with none relating to this matter (Hallisey Affidavit, ¶ 2-6). Ms. Hallisey was a passive contingent third-party beneficiary of the Plan while the acts and omissions at issue occurred, and was not aware that she was the sole beneficiary until nearly a year and a half after Ms. Kovanda's death.

For these reasons, the State law Unjust Enrichment - Count V - against Ms. Hallisey should be dismissed without prejudice.

## RULE 12(b)(6) PLEADING STANDARD

"A motion to dismiss is designed to test the legal sufficiency of the complaint." White v. Comm'r. of Internal Revenue, 899 F. Supp. 767, 771 (D. Mass. 1995). In ruling on a motion to dismiss, the court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences." Cooperman, 171 F.3d at 46. On the other hand, "unsupported conclusions or interpretations of law" will not be accepted by the court. See Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). The court need not accept " 'bald assertions, as well as 'subjective characterizations,' " and "[c]onclusory allegations, stand[ing] alone, are a danger sign that the plaintiff is engaged in a fishing expedition." See DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

If the complaint, so viewed, presents no set of facts justifying recovery, its dismissal is warranted. Id.; see also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965-65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...") (citations omitted). As the First Circuit repeatedly cautions, Rule 12(b)(6) is "not entirely a

toothless tiger." <u>Dartmouth Review v. Dartmouth Coll</u>., <u>889 F.2d 13, 16</u> (1st Cir. N.H. 1989);

<u>Correa-Martinez v. Arrillaga-Belendez</u>, <u>903 F.2d 49, 52</u> (1st Cir. 1990).

### C.   THE EXTENUATING FACTS CITED BY PLAINTIFFS ARE IRRELEVANT TO ERISA LAW ON BENEFICIARY DETERMINATION UNDER KENNEDY, MS. HALLISEY IS THE PROPER BENEFICIARY UNDER THE PLAN DOCUMENT'S UNAMBIGUOUS TERMS AS THE DESIGNATED BENEFICIARY ON FILE OF MS. KOVANDA.

Under *Kennedy, supra*, the unambiguous terms of the Plan Document govern a Plan Administrator's determination as to the the proper beneficiary, and reporting errors or other inconsistent communications by the Plan Administrator or its agents through Summary Plan Documents, Account Statements, mailings and other means of communication cannot have effect of changing the beneficiary designation, or amending the Plan.  If they did, then ERISA's stability and predictability would be undermined every time a few co-conspirators convene to claim the valid form doesn't reflect the wishes of the deceased participant.  Quoting Kennedy, "ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," <u>29 U.S.C. § 1102(a)(1)</u>, "specify[ing] the basis on which payments are made to and from the plan," § 1102(b)(4). The plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I and [Title IV] of [ERISA]," § 1104(a)(1)(D), and ERISA provides no exemption from this duty when it comes time to pay benefits." *Kennedy*.

All of the noisy claims by Plaintiffs as to speculative reliance by Ms. Kovanda are not relevant to a determination of a proper beneficiary.  A Plan Administrator must look to the unambiguous terms of the Plan Document, and finding a beneficiary designation form validly filed, the inquiry ends, and the distribution must proceed. *Kennedy*.  Ms. Hallisey is the name on that only valid beneficiary form and is the proper beneficiary of the account.

As it relates to Ms. Hallisey, Plaintiffs' twenty-nine page First Amended Complaint ("Compl.") supported by thirty-one exhibits advances several causes of action against Heitman relating to its supposed breaches of fiduciary duty, estoppel and reliance to justify avoiding the obvious – Ms. Hallisey is the proper beneficiary of Ms. Kovanda's account, and Plaintiffs claims against her that root in the foundation that she was the improper beneficiary must be dismissed for failing to state a claim.

The claims arise primarily from Heitman's contracted recordkeeper John Hancock Retirement Plan Services ("JHRPS") failing to include accurate account beneficiary status information on monthly statements it sent Ms. Kovanda, and for Heitman exercising its Plan Document-conferred discretion (Plan Document §14.3) in  determining after Ms. Kovanda's death that based on the Plan Document's unambiguous terms as to designation of beneficiary (Plan Document §12.7), the existence in its files (as required by the Plan Document[5]) of a validly executed and accepted Beneficiary Designation Form (Compl. Ex. M) naming Ms. Kovanda's now-deceased parents and only Ms. Hallisey as Ms. Kovanda's beneficiaries, that Ms. Hallisey is the proper beneficiary of Ms. Kovanda's 401(k) account.  After rejecting Plaintiffs' appeal of that determination, for distributing the account balance of approximately $1.44 million dollars, to Ms. Hallisey.

Plaintiffs ask for a declaratory judgment that the estate, not Ms. Hallisey, is the proper beneficiary of Ms. Kovanda's 401(k) despite a valid beneficiary designation form completed by

---

[5] Plan Document, relevant excerpt:

    12.7.  <u>Designation of Beneficiary</u>.  Each Participant may, from time to time, designate any legal or natural person or persons (who may be designated concurrently, contingently, or successively) to whom his benefits are to be paid if he dies before receiving all his benefits.  The Participant shall designate a Beneficiary on a form furnished by or acceptable to the Plan Administrator.  Such designation shall become effective only if a properly executed form is filed with the Plan Administrator while the Participant is alive. An effective Beneficiary designation shall cancel all Beneficiary designations that were filed previously.

Ms. Kovanda in August 2002 that named her parents as primary beneficiaries and Ms. Hallisey, and notably *none of her siblings, including Plaintiffs*, as contingent beneficiaries.

Plaintiffs allege that because of a "no-data-in, no-data-out" error by the Plan's recordkeeper, Ms. Kovanda can be assumed to have forgotten that she had specified her now-deceased parents and Ms. Hallisey as her designated beneficiaries, and Heitman should be estopped from following the Plan Document's unambiguous terms and instead be ordered to invalidate the only beneficiary designation form that Ms. Kovanda ever set her hand to. That would bypass Ms. Hallisey as her proper beneficiary, so that the funds would instead be distributed according to the resulting fiction that no beneficiary was ever designated. This would invert the beneficiary 180 degrees from being Ms. Hallisey and not the Plaintiffs, to being the Plaintiffs and not Ms. Hallisey. They call this "equitable", which will be addressed below.

Plaintiffs attempt to develop "indisputable" evidence of Ms. Kovanda's desire to leave all her assets to Plaintiffs and their brother Kevin Kovanda, all siblings of Ms. Kovanda and Ms. Hallisey, by presenting the affidavit (ECF 22-14) of an estate planning attorney, Natalie Feldman ("Feldman"), who allegedly spoke to, but never positively identified according to her affidavit, a woman claiming to be Ms. Kovanda by phone. Feldman includes with her affidavit a handwritten but unsigned "estate planning questionnaire" that Plaintiffs aver Ms. Kovanda filled out herself (ECF 22 ¶ 66) but which features at least two different handwritings, neither of which are Karen Kovanda's. (Hallisey Affidavit, ¶30-34) From these interactions, and without ever meeting Ms. Kovanda in person, Feldman "emailed" a Will and Trust document to Ms. Kovanda (ECF 22-14, ¶8) on May 26, 2021 that Ms. Kovanda purportedly executed in full awareness of the objects of her bounty, the day before she died, witnessed only by nurses at her bedside. The will makes no mention of Ms. Hallisey. (ECF 22-1). Plaintiffs present this unauthenticated and

suspiciously sourced evidence as "clear confirmation" of Ms. Kovanda's newfound desire to prevent Heidi Hallisey from receiving the very benefit she previously directed to be hers alone.

Plaintiffs cannot ignore the elephant in the room - that Ms. Kovanda should be charged with knowledge of what she signed – a beneficiary designation form (see Plaintiffs' First Amended Complaint "Compl.", Ex. M) that expressly instructed her that a beneficiary change would require another beneficiary form to be completed and submitted:



Plaintiffs speculate that Ms. Hallisey must have been misled by the missing beneficiary information on the monthly statements[6] into forgetting that she had in fact designated Ms. Hallisey as her beneficiary, likely in person, since she worked at Heitman's Chicago headquarters. (Hallisey Affidavit, ¶ 29).  They speculate that she ignored the advice of Attorney Feldman, an experienced estate planning attorney, who advised her to ensure that every account had a designated beneficiary of her choosing so that the account would pass ex-probate and not to rely on the default distribution rules to control. This and the Complaint's other speculative misunderstandings attributed to Ms. Kovanda posit that she would have blindly relied on the incorrect information on statements in much in the same way as, just for example, an undue

---

[6] The monthly statements include a disclaimer that errors should be reported to the plan, and the beneficiary field was blank because JHRPS Service Agreement never called for Heitman to provide it with a list of the current beneficiaries. Consequently any prior beneficiary designation forms were not accounted for in JHRPS' reporting.  For its part, the Plan Document only calls for beneficiary designation forms to be retained by Heitman in its records, so all of Heitman's actions with regard to Ms. Hallisey as beneficiary were in conformity with the Plan Document.

influencer might have if they searched her papers without her participation in order to find out

before her death what accounts needed improper beneficiary changes.  Plaintiffs advance a

fiction that Ms. Kovanda operated without awareness of her own past actions to designate a

beneficiary according to her then-current wishes and instead ask the court to in effect amend the

Plan Document to declare that statement and Summary Plan Document ("SPD") inconsistencies

that conflict with the Plan Document's terms act to override the Plan Document's terms, not the

other way around.

      Once Ms. Hallisey became aware of the facts in the case and for over three months

resisted Heitman's proposal to work out a settlement with Plaintiffs that conveniently included a

release of claims against Heitman or have the funds placed in interpleader, Heitman finally

identified Ms. Hallisey as the proper beneficiary of the account

      Because the Plan Document is unambiguous, and a valid beneficiary form was in the files

of the Plan Administrator, all counts (I, II, III, IV and V) as to Ms. Hallisey that depend on a

finding of improper determination of beneficiary to claim against her should be dismissed for

failing to state a claim.  Any counts that claim that Heitman is liable for its agent JHRPS

miscommunication are not properly dismissed.


### E.  PLAINTIFFS UNJUST ENRICHMENT CLAIM AGAINST MS. HALLISETY MUST FAIL BECAUSE THE PLAN, NOT PLAINTIFFS, CONFERRED THE BENEFIT ON HER, THERE WAS NO MISTAKE MADE IN DETERMINING SHE WAS THE PROPER BENEFICIARY, AND THEY COME WITH UNCLEAN HANDS.

Unjust enrichment sounds in equity. To prevail on an unjust enrichment claim in Florida, the

plaintiff must plead and prove that:

1) It conferred a benefit on the defendant. 2) The defendant knew of the benefit. 3) The defendant accepted or retained the benefit. 4) Under the circumstances, it would be inequitable for the defendant to retain the benefit without paying fair value for it.

(14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc., 43 So. 3d 877, 881 (Fla. 1st DCA 2010).)

Here, Plaintiffs incorrectly allege that they conferred a benefit on Ms. Hallisey. Alternatively, they appear to argue that the estate, standing in Ms. Kovanda's shoes, conferred a benefit to Ms. Hallisey after her death. Both are incorrect for several reasons.

1. First, because there was a valid beneficiary designation on Ms. Kovanda's 401(k) account, the asset passes to Ms. Hallisey outside of Ms. Kovanda's estate and never becomes an asset of the estate subject to the terms of Ms. Kovanda's will's devises. Further, Ms. Hallisey's status as beneficiary of Ms. Kovanda's 401(k) account during her life did not give her any vested interest in property while Ms. Kovanda was alive. She was merely the third-party beneficiary of the contract (the Plan Document) for the 401(k) account.  Under the common law of contracts, at least as it applies to third-party beneficiary insurance contracts, a third-party beneficiary in an ordinary contract is subject to the limitation of its terms as (s)he has no greater rights under it than are provided in the contract itself.  Williston on Contracts, §37:29 (2009).  Ms. Hallisey's only rights, therefore, were to act as beneficiary so long as Ms. Kovanda continued to designate her as beneficiary.  The right to act as a beneficiary so long as Ms. Kovanda designated her as a beneficiary is not a vested interest in property, so nothing was conferred to Ms. Hallisey during Ms. Kovanda's life.  The Estate stands in the shoes of Ms. Kovanda during her life, and has not therefore conferred a benefit on Ms. Hallisey.

If a perceptible benefit can be squeezed from the designation of Ms. Hallisey as contingent beneficiary in 2002, then the consideration she gave in equity for it – allowing Ms. Kovanda to live with her for two years - is more than adequate to make her retention of the benefit just.

2.   The claims against Ms. Hallisey for unjust enrichment are Florida state law claims that can and should be brought by Plaintiffs in Florida, and then only if this or another court first interprets the facts of this case under ERISA and makes a finding of fact that the funds were improperly distributed to Ms. Hallisey, rendering the distribution to her by the Plan a mistake by the Plan or Heitman as its Plan Administrator.   Even in that event, any potential unjust enrichment claims would be properly brought by Heitman or the Plan, not by Plaintiffs, since the Plan, not Ms. Kovanda or the Plaintiffs in her shoes, conferred a benefit on Ms. Hallisey in distributing the  pretax contributions Heitman as Ms. Kovanda's employer made *on her behalf* (Plan Document §5.1(a), §5.3, §7.1.(a)) from its trust fund (Plan Document §2.16) in error.

3.   Absent a mistaken distribution by Heitman as described in #2 above, the only other unjust enrichment claim available to Plaintiffs under Florida law would involve a separate promise or agreement by Ms. Hallisey with respect to the 401(k) funds at issue. This fact pattern does not (and cannot) exist for the Plaintiffs, since Plaintiffs allege that Ms. Hallisey had no knowledge of her being the sole beneficiary until Plaintiffs saw fit to share that fact with her a full ten months after they learned it themselves (Compl. Ex. F, ¶6-8, Hallisey Affidavit).  Plaintiffs spent the interim self-serving ten month "exclusive negotiation" period desperately trying to strongarm Heitman into violating its fiduciary duty to Ms. Hallisey with the same flimsy and irrelevant-as-to-

ERISA claims as recited in their expansive Complaint (See, e.g., Compl. Ex. Q, as one of many examples of Plaintiffs' making the same (un)reasonable reliance/inchoate intent arguments to Heitman's Administrators).

4.   As to equitable relief, Plaintiffs are not entitled to it because they seek it with unclean hands.  In <u>Dr. Jose S. Belaval, Inc. v. Perez-Perdomo</u>, the First Circuit explained the doctrine of unclean hands:

> [T]he maxim that "[h]e who comes into equity must come with clean hands," <u>Keystone Driller Co. v. Gen. Excavator Co.</u>, <u>290 U.S. 240, 241</u>, <u>54 S.Ct. 146</u>, <u>78 L.Ed. 293</u> (1933), *finds its roots in traditions of equity jurisprudence that predated the merger of law and equity.* See id. at 244–45, <u>54 S.Ct. 146</u>; see also <u>Shondel v. McDermott</u>, <u>775 F.2d 859, 867</u>–68 (7th Cir<u>. 1985</u>) (discussing the relationship of the doctrine to the "moralistic ... jurisprudence created by the Lord Chancellors of England when the office was filled by clerics") (Posner, J.). *The basic premise is that when a district court considers whether or not to award equitable relief, one factor that it must consider is the extent to which the plaintiff has engaged in certain misconduct.* See <u>Texaco P.R., Inc. v. Dep't of Consumer Affairs</u>, <u>60 F.3d 867, 880</u> (1st Cir<u>. 1995</u>).
>
> <u>488 F.3d 11, 15</u> (1st Cir<u>. 2007</u>).

The First Circuit explained further that *"[t]he doctrine has limits, and not all misconduct by a plaintiff will soil that plaintiff's hands*." Id. *The limits are these: the doctrine "only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'* " Id. (quoting <u>Texaco P.R., Inc.</u>, <u>60 F.3d at 880</u>).

For the Plaintiffs, a 180 degree inversion of beneficiary is an "equitable" outcome. Plaintiffs own evidence shows that they to have gone to great lengths to tilt the field against Ms. Hallisey in pursuit of their vulnerable sister's Ms. Kovanda's assets, and admit to withholding information from Ms. Hallisey that she was the named beneficiary for ten months they could attempt to undermine her rights uncontested. When viewed through an equitable lens, however, they have unclean hands, by their own admission. It is notable that by their own affidavit (Compl. Ex. L, #6-8), Plaintiffs found out that Ms. Hallisey was the named beneficiary in January 2022, yet they nor Heitman informed her until ten months later, in November 2022, during which interim period they made repeated attempts through emails and letters from their attorneys to pressure Heitman into distributing the funds to the estate while unfairly leaving Ms. Hallisey oblivious to the attack on her rights as the proper beneficiary.  In contrast, months earlier, in September of 2021, Ms. Hallisey immediately forwarded to Plaintiffs an email she received from Wells Fargo (sent because, but without saying she was the named beneficiary on Ms. Kovanda's Wells Fargo IRA, presumably after Plaintiffs had attempted to wrongfully demand the proceeds).  Despite being aware that Ms. Hallisey was the named beneficiary, Plaintiffs responded to Ms. Hallisey by deceiving her that Wells Fargo was only looking for Ms. Kovanda's Death Certificate, and that they would take care of it. (Hallissey Affidavit, ¶¶ 19-26).  Plaintiffs then proceeded, as with Heitman, to pressure the Wells Fargo representative to ignore the beneficiary on file and distribute the funds to the estate and ultimately to them. (Id.).

Had Plaintiffs acted in good faith and equity and informed her of the beneficiary form in January 2022 when they learned about it, Ms. Hallisey might have participated

in the significant stock market appreciation that took place in 2022. Instead, because of Plaintiffs delaying her knowing about the form, she only received the money in May of 2023, two years after Ms. Kovanda's death.  Ms. Hallisey is the innocent victim in the Plaintiffs' schemes to deprive her of the gifts that her sister generously intended for her.

## V.      CONCLUSION:

For the above reasons, the Defendant requests that the Court dismiss the Plaintiffs' First Amended Complaint's counts II and V against Ms. Hallisey with prejudice and enter judgment against the Plaintiffs awarding Ms. Hallisey her attorney fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C.  §1132(g)(1) as well as any other relief the Court deems equitable.

Respectfully submitted,

HEIDI HALLISEY, Defendant

Date:  November 22, 2023           BY   /s/ James D. Sullivan
                                         JAMES D. SULLIVAN
                                         Admitted *pro hac vice*
                                         Georgia Bar #521721
                                         411 Walnut St, PMB 15855
                                         Green Cove Springs, FL 32043
                                         Tel. (770)329-3710
                                         jimsullivan20@gmail.com

### *LOCAL RULE 7.1(a)(2) CERTIFICATION*

I, James D. Sullivan, hereby certify that I have attempted to confer with Plaintiffs Counsel of record by electronic mail to resolve the subject matter of this motion before filing.

DATED:   <u>November 22, 2023</u>

_____<u>/s/ James D. Sullivan</u>_____
JAMES D. SULLIVAN

### ***<u>CERTIFICATE OF SERVICE</u>***

I, James D. Sullivan, hereby certify that I have served the above document on the Plaintiff's and Co-Defendants' Counsel of record by electronic mail through this Court's CM/ECF system.

DATED:   <u>November 22, 2023</u>

_____<u>/s/ James D. Sullivan</u>_____
JAMES D. SULLIVAN
