United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| Ross Kovanda and James LaRose, as Executors of the Estate of Karen Ann Kovanda and as Trustees of the Karen Ann Kovanda Revocable Living Trust,<br><br>Plaintiffs,<br><br>v.<br><br>Heitman, LLC, as Administrator of the Heitman Employees Advantage Retirement Plan,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>23-12139-NMG |

## MEMORANDUM & ORDER

**GORTON, J.**

This action arises from a dispute over the distribution of an employer-sponsored retirement savings plan account that belonged to Karen Ann Kovanda ("Kovanda"). Following Kovanda's death in 2021, her former employer, Heitman LLC ("Heitman" or "defendant"), distributed the proceeds of her retirement account to Kovanda's sister, Heidi Hallisey ("Hallisey"), based on a beneficiary designation Kovanda had submitted in 2002.

Plaintiffs Ross A. Kovanda and James P. LaRose (collectively, "plaintiffs") are the executors of Kovanda's last will and testament and trustees of the Karen Ann Kovanda Revocable Living Trust. Citing the Employee Retirement Income

-1-

Security Act of 1974, 29 U.S.C. §§1001 et seq. ("ERISA"), they contend that Heitman should have distributed the funds to Kovanda's estate instead of to Hallisey and have brought suit against Heitman, seeking to recover the value of the distributed proceeds.

Defendant now moves for summary judgment, arguing that plaintiffs have failed to prove detrimental reliance and that Heitman's acts were fiduciary in nature and thus covered by ERISA.  For the reasons that follow, that motion will be denied.

## I. Facts

### a. Heitman Retirement Account

Kovanda worked for Heitman from 1994 until her retirement in July, 2017.  During her employment she participated in Heitman's retirement savings plan ("the Plan"), for which Heitman is the Plan Sponsor and Plan Administrator.

In 1994 Kovanda completed a paper beneficiary designation for her Heitman retirement account ("the Account"), naming her husband as her primary beneficiary and her parents as contingent beneficiaries.  Her husband died several years later, after which, in 2002, Kovanda completed another paper beneficiary designation for the Account, naming her parents as the primary beneficiaries and Hallisey as the contingent beneficiary.  The completed hard-copy beneficiary-designation form was submitted to a Heitman benefits coordinator, who placed it in Kovanda's

-2-

hard-copy personnel file in accordance with protocol at the time.

In 2017, Heitman replaced its previous records administrator for the Plan with John Hancock Retirement Plan Services ("JHRPS").  As per a Service Agreement entered into between JHRPS and Heitman, JHRPS's responsibilities included corresponding with the prior recordkeeper, furnishing participants with Summary Plan Descriptions and, as on-going services, providing Heitman with Beneficiary Election Processing and Maintenance and Participant Account Statements.  Unlike the previous records administrator, the services of JHRPS included electronic collection and maintenance of beneficiary designations for Plan participants.  The Service Agreement did not, however, specify whether Heitman would provide JHRPS with plan participants' existing hard-copy beneficiary-designation forms.  In concert with its transition to JHRPS, Heitman amended and restated the Plan.  The amended Plan provided that participants' beneficiary designations could "be revoked or amended at any time . . . and the most recent designation shall govern."

In November, 2017, JHRPS notified Plan participants, including Kovanda, of the services offered by JHRPS and noted that it is "important to keep your beneficiary designations up to date" and that participants could view and change those

designations on the JHRPS website at any time.  JHRPS also furnished Summary Plan Descriptions in 2018, 2020 and 2021 stating that

> [i]f you do not contact John Hancock to select a beneficiary, your beneficiary will be your surviving spouse, or, if none, your trust, or if none, your surviving children, . . . or, if none, your estate.

In the summer of 2018, JHRPS advised Heitman that 72 former Heitman employees, including Kovanda, had not designated a beneficiary through JHRPS.  At Heitman's request, JHRPS sent flyers to those participants, highlighting the importance of having a beneficiary on file, informing them that they could manage their beneficiary on the online portal and stating

> [s]ingle individuals are free to name anyone they choose as a beneficiary.  If no one is named, the account will go to the estate . . . .

Earlier in 2018, Kovanda contacted Heitman to report that she had not received her last two quarterly statements in the mail. Heitman advised that she could call JHRPS or access the statements on the JHRPS online portal.  Several months later, Kovanda called JHRPS to request that her quarterly statements be mailed to her.  When JHRPS advised her that she could access the statements online, Kovanda replied, "I prefer written copies because I have to give certain things to my accountants and so on . . . ."  At least some of the requested statements were mailed to Kovanda and included a notation that her account had

"no beneficiaries elected."  In 2020, Kovanda called JHRPS for a second time to record her change of address to ensure that she continued to receive her statements by mail.

### b. Heitman Retirement Account

In November, 2021, Kovanda contacted Attorney Natalie Feldman to begin drafting an estate plan.  Kovanda told Feldman she had two retirement accounts, one of which had a designated beneficiary she was about to change and one of which had no designated beneficiary so that it would pass to her estate or trust.  Kovanda did not identify the accounts by name.  Feldman advised Kovanda to complete a beneficiary form for the account without one.

Kovanda also completed and returned to Feldman an estate-planning questionnaire.  In it she identified three retirement accounts: Wells Fargo, CTG/Fidelity Investments and Heitman/John Hancock.  In the questionnaire Kovanda also indicated her intent to name three of her siblings as her beneficiaries: Joe'l LaRose, Kevin Kovanda and Ross Kovanda.  In her affidavit submitted in this case, Feldman states that Kovanda also orally expressed her intent to leave her assets to those three siblings and to exclude her other three siblings (Hallisey, James Kovanda and Brian Kovanda).

At some point thereafter, Kovanda's health deteriorated and she was hospitalized.  While Kevin and Joe'l were visiting

Kovanda in the hospital in May, 2021, Kovanda reiterated her desire to exclude Hallisey, Brian and James from her will. The following day, Kovanda executed her last will and testament from her hospital bed, naming plaintiffs as the co-Trustees of the Trust and as co-executors of her estate. Ross, Kevin and Joe'l were named as the beneficiaries of the Trust. Kovanda died the next day. She was survived by her six siblings.

### c. **Heitman Retirement Account**

After Kovanda's death, Joe'l and Kevin went to Kovanda's residence to retrieve documents. They located Quarterly Account Statements for the Heitman Account, a pre-filled Change of Beneficiary form for Kovanda's Wells Fargo IRA and documents related to the CTG/Fidelity account with handwritten annotations by Kovanda.

Later in 2021, plaintiffs contacted Heitman to inquire about the disposition of the Account. Heitman referred them to JHRPS, noting that "Heitman does not have a formal roll [sic] in this process." JHRPS then informed plaintiffs that it had no beneficiary information for the Account and that they would need to obtain a Death Benefit Distribution form from Heitman. When plaintiffs contacted Heitman to request the form, Heitman replied that there was no beneficiary indicated in the system and that they had called in Kovanda's personnel file from storage for review.

-6-

Upon finding the 2002 beneficiary form naming Hallisey as Kovanda's contingent beneficiary, Heitman asked JHRPS whether the form was still valid and expressed uncertainty about how the Account should be dispersed.  The ERISA group at JHRPS advised Heitman that the 2002 designation controlled and Heitman communicated that information to plaintiffs.  Heitman later rejected plaintiffs' written claim seeking distribution of the Account and the subsequent appeal of that decision, having determined that it was required to distribute the funds in the Account to Hallisey as per the 2002 designation.

Plaintiffs filed the instant lawsuit in 2023, seeking to recover the amount contained in the Account at the time of Kovanda's death.  Defendant filed a motion to dismiss, which the court allowed, in part, and denied, in part.  Following discovery, defendant now moves for summary judgment.

## II.  **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists when the evidence, with respect to the material fact in dispute, "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23, 106 S. Ct. 2548.  Where the non-movant bears the ultimate burden of proof at trial, he must present enough "definite, competent evidence to rebut the motion." Greene v. Cabral, 323 F. Supp. 3d 96, 104 (D. Mass.

-8-

2018) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

### III. Discussion

#### a. Evidence of Causation and Damages

ERISA is a comprehensive statute intended to protect and promote the interests of employees and their beneficiaries in employee benefit plans. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). It imposes certain requirements on plans and plan administrators, such as uniform standards, reporting rules, disclosure obligations and fiduciary responsibilities. Id. at 91. While ERISA has numerous, specifically-applicable provisions under which a plan participant may bring suit, Congress also included a "catchall" provision in Section 502(a)(3), providing for the kind of relief typically available in equity. Est. of Smith v. Raytheon Co., 573 F. Supp. 3d 487, 503 (D. Mass. 2021). Plaintiffs rely on that section here. As briefed by the parties, to state a claim sounding in equity under Section 502(a)(3), plaintiff must demonstrate that Kovanda reasonably relied on a misrepresentation, i.e. the JHRPS statements, to her detriment.

#### i. Causation

Defendant contends that plaintiff has failed to proffer sufficient probative evidence that Kovanda read, believed and reasonably relied on the JHRPS statements. The Court disagrees

-9-

and finds a genuine dispute of material fact that precludes adjudication at this juncture.

Plaintiffs have identified circumstantial evidence suggesting that Kovanda read and relied on the statements. She explicitly asked for paper copies of the statements because she preferred written copies for recordkeeping, and those copies were found in her residence after her death. A reasonable inference is that she read the materials she specifically requested. Thus, contrary to defendant's contention, plaintiffs have presented evidence suggesting Kovanda read the statements.

As for whether Kovanda believed the statements, Feldman notes in her affidavit that Kovanda told her that she had two accounts, one with a designated beneficiary (which the parties agree is likely the Wells Fargo account) and the other without a designated beneficiary. The parties dispute whether the second account is the Heitman account, as plaintiffs contend, or the CTG/Fidelity account, as defendant contends. Both parties have presented circumstantial evidence in support of their contention. At this stage, the Court declines to assess the conflicting evidence. See Coyne v. Taber Partners I, 53 F. 3d 454, 460 (1st Cir. 1995) ("[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary

-10-

judgment stage."). This is precisely the kind of contested material fact that renders summary judgment inappropriate.

Defendant also emphasizes that Kovanda did not finalize her estate until the day before her death and avers that plaintiffs cannot therefore claim that Kovanda chose to exclude Hallisey from her inheritance because, had the account passed by intestacy as she allegedly believed it would until her final estate plan, it would have been divided among her surviving siblings, including Hallisey.[1] Plaintiffs respond that Kovanda had begun estate-planning well before her death and made her intent to exclude Hallisey clear when drafting her will with Attorney Feldman and at the hospital when she executed her final will.[2] Again, the Court finds that a genuine dispute of material fact precludes the allowance of summary judgment on this issue.[3]

### ii. Damages

Defendant also submits that plaintiffs have failed to prove that any reliance on their conduct was detrimental to Kovanda because, until just before her death, her estate was subject to Kentucky's default intestacy law under which Hallisey stood to

---

[1] The Court notes that under Kentucky's intestacy law, the surviving siblings would not have inherited Kovanda's estate until their mother's death in January, 2021. See Ky. Rev. Stat. §391.010.
[2] Defendant suggests that Kovanda was not fully competent to sign the documents the day before her death but the Court disagrees and will not disregard her statements as circumstantial evidence of her intent. See Transcript at KOV000249 (Kovanda identifying her siblings in the room and her nurse stating that Kovanda is "with it").
[3] Having so concluded, the Court need not discuss the reasonableness of any reliance.

inherit from the estate.  As an initial matter, that argument overlooks the fact that Hallisey stood to inherit from the estate only after their mother's death in January, 2021.

Furthermore, the Court agrees with plaintiffs that defendant's argument is irrelevant.  The operative inquiry is whether Kovanda detrimentally relied on the JHRPS statements that she had no elected beneficiary for the account, not whether Kovanda would have been harmed had she not executed her will before her death.  Plaintiffs have proffered evidence of detrimental reliance.  Based on representations from JHRPS, Kovanda believed the account would pass to her estate such that three of her siblings would benefit but Hallisey would not.  The distribution of the proceeds to Hallisey was inconsistent with that intent and thus could be deemed to have caused harm to Kovanda and her trust.

In sum, there is a genuine dispute about the extent to which Kovanda detrimentally relied on the JHRPS statements.  As such, summary judgment is unwarranted.

### b. Fiduciary Duty

Defendants also move for summary judgment as a matter of law, contending that maintenance of beneficiary-designation forms and communication of the status of a plan participant's beneficiary-designation are not fiduciary acts covered by ERISA.

-12-

As a plan administrator, Heitman is subject to certain fiduciary duties under ERISA.  Specifically, ERISA provides that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use . . . .

29 U.S.C. §1104(a)(1).  Not all actions taken by a plan administrator are fiduciary in nature.  Only those actions involving discretion over the management of the plan, its funds or its administration are fiduciary. Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008).

Although the duty of a fiduciary to communicate the status of a participant's beneficiary-designation is not clear, defendants themselves note that plan administrators have fiduciary duties not to mislead beneficiaries about plan benefits and not to provide inaccurate information about a plan's operation.  That is apparently what occurred here. Through its agent, Heitman communicated to Kovanda that she had no designated beneficiary but that information did not accurately describe the plan's operation, i.e. that the proceeds would not be distributed as though Kovanda had died intestate. Accordingly, Heitman breached its fiduciary duty to convey complete and accurate information about the plan's operation.[4]

---

[4] Having so concluded, the Court need not decide whether the maintenance of beneficiary-designation forms is a fiduciary act.

-13-

See In re Unisys Corp. v. Retiree Med. Ben. ERISA Litigation, 57 F.3d 1255, 1266-67 (3rd Cir. 1995) (holding that ERISA fiduciary had duty to communicate complete and accurate information about beneficiary's status); see also Sullivan-Mestecky v. Verizon Comms. Inc., 961 F.3d 91, 104 (2nd Cir. 2020) (plan administrators act as fiduciaries under ERISA when they communicate with plan members and beneficiaries about plan benefits).

**ORDER**

For the foregoing reasons, defendant's Motion for Summary Judgment (Docket No. 119) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
Senior United States District Judge

Dated: May 21, 2026

-14-